UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLONIAL GHOSTS LLC, d/b/a/ SALEM GHOSTS AND ZAAL VENTURES CORP., <br><br> Plaintiffs <br><br> v. <br><br> CHARLES D. BAKER, in his Official Capacity as Governor of the Commonwealth of Massachusetts and in his Individual Capacity, MONICA BHAREL MD, MPH, in her Official Capacity as Commissioner of the Massachusetts Department of Public Health and in her Individual Capacity and MICHAEL KENNEALY, in his Official Capacity as Secretary of Massachusetts Housing and Economic Development and in his Individual Capacity, <br><br> Defendants | CIVIL ACTION NO. 1:20-CV-12054 <br><br> PRELIMINARY EQUITABLE RELIEF REQUESTED |

# COMPLAINT

Plaintiffs Colonial Ghosts, LLC DBA Salem Ghosts and Zaal Ventures Corp. as and for their Complaint against Defendants allege as follows:

1. This lawsuit challenges the Defendants' acts of unreasonably and arbitrarily restricting speech in public areas that historically have been open for public speech and expression of ideas by limiting the number of people allowed to be on an outdoor walking tour to 10 to 12 people while allowing other outdoor gatherings on public property to be anywhere from 25 to 100 people or unlimited.

1

2. The Plaintiffs are licensed to provide outdoor guided walking tours on public streets and public sidewalks through historical locations in Salem, Massachusetts which is an activity that involves speech and/or expressive conduct.

3. While the Plaintiffs bringing the instant action recognizes the circumstances caused by the severity of the Covid-19 Pandemic (*hereinafter*, "Pandemic") which may justify restrictions on businesses, the restrictions and emergency orders imposed by the Commonwealth are subject to limitations enshrined in the United State Constitution.

4. The instant civil action challenges the constitutionality of restrictions implemented by the Commonwealth which infringe upon the Plaintiffs' First Amendment right to free speech and Fourteenth Amendment. Specifically, the Commonwealth has unreasonably and arbitrarily placed limitations on speech in traditional fora, public ways and sidewalks.

> Such areas occupy a "special position in terms of First Amendment protection" because of their historic role as sites for discussion and debate. These places—which we have labeled "traditional public fora"—" 'have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' " . . . .
>
> [T]he guiding First Amendment principle that the 'government has no power to restrict expression because of its message, its ideas, its subject matter, or its content' applies with full force [on public ways and sidewalks].

*McCullen v. Coakley*, 573 U.S. 464, 476-77 (2014) (quoting *United States v. Grace,* 461 U.S. 171 (1983); *Pleasant Grove City v. Summum,* 555 U.S. 460, 469 (2009) (quoting *Perry Ed. Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37 (1983); Police Dept. of Chicago v. Mosley, 408 U.S. 92, 95 (1972)).

5. The Plaintiffs seek declaratory and injunctive relief necessary to uphold bedrock principles of the First Amendment and the rule of law. Even in the face of the Pandemic, the Commonwealth of Massachusetts cannot set unreasonably restrict and arbitrarily ignore the First Amendment rights of its citizens.

## JURISDICTION AND VENUE

6. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(3) in that the controversy arises under the United States Constitution and 42 U.S.C. §1983.

7. Jurisdiction of this Court is appropriate where the Plaintiffs seek injunctive relief under the United State Constitution and 42 U.S.C. §1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); *Dirrane v. Brookline Police Dep't*, 315 F.3d 65, 71 (1st Cir. 2002).

8. This Court has authority to award attorney's fees and costs pursuant to 42 U.S.C. §1988.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims took place in the Commonwealth of Massachusetts.

## PARTIES

10. Plaintiff Colonial Ghosts LLC, d/b/a Salem Ghosts, is a business corporation incorporated under the laws of the Commonwealth of Virginia operating in Salem, Massachusetts with a local office located at 221 Essex Street, Suite 41, Salem, MA.

11. Plaintiff Zaal Ventures Corp. is a foreign corporation with its principal office located at 1006 Richmond Road, Suite 300 Williamsburg, VA 23185

12. Defendant Charles D. Baker, in his official capacity, is the Governor for the Commonwealth of Massachusetts. The Governor has the authority to issue and enforce executive orders.

13. Defendant Michael Kennealy, in his official capacity, is the Secretary of Housing and Economic Development for the Commonwealth of Massachusetts. The Governor has delegated authority to the Secretary to issue guidance for executive orders related to the Pandemic.

14. Defendant Monica Bharel, MD, MPH, in her official capacity, is the Commissioner of Massachusetts Department of Public Health. The Governor has delegated authority to the Commissioner to issue guidance for executive orders related to the Pandemic.

## GOVERNOR BAKER'S EXECUTIVE ORDERS

15. Since March 10, 2010, the Pandemic has and continues to spread through community transfer in the Commonwealth of Massachusetts and the United States.

16. The Pandemic has caused exigent circumstances which required emergency responses from the executive, legislative, and judicial branches of the Commonwealth.

17. On March 10, 2020, Gov. Baker declared a state of emergency in the Commonwealth of Massachusetts due to the outbreak of the 2019 Novel Coronavirus pursuant to Massachusetts Executive Order No. 591.

18. On March 23, 2020 Gov. Baker issued COVID-19 Order No. 13 that "[a]ll businesses and other organizations that do not provide COVID-19 Essential Services shall close their physical workplaces and facilities…" Places of worship were not "required to close their brick and mortar premises to workers or the public; provided, however, that such institution shall be required to comply with all limitations on gatherings established in [COVID-19 Order No. 13]."

19. COVID-19 Order No. 13 prohibited the "[g]athering of more than 10 people…throughout the Commonwealth."

20. Pursuant to COVID-19 Order No. 13, the Department of Public Health is charged with enforcing COVID-19 Order No. 13 pursuant to G.L. c. 111, § 30.

21. On March 31, 2020, the limitations on gatherings and enforcement authority established by COVID-19 Order No. 13 were extended by COVID-19 Order No. 21.

4

22. On April 28, 2020, the limitations on gatherings and enforcement authority established by COVID-19 Order Nos. 13 and 21 were extended by COVID-19 Order No. 30.

23. On June 6, 2020, the limitations on gatherings and enforcement authority established by COVID-19 Order Nos. 13, 21, and 30 were extended by COVID-19 Order No. 38.

24. On June 1, 2020, Gov. Baker issued COVID-19 Order No. 35 identifying certain businesses as "Phase III" businesses. COVID Order No. 35 permitted Phase III businesses to prepare for reopening.

25. COVID-19 Order No. 35 included "[s]ightseeing and other organized tours (bus tours, duck tours, harbor cruises, whale watching)" in the category of Phase III businesses.

26. COVID-19 Order No. 35 expressly stated in Phase II that "no guided tours" were permitted on outdoor historical spaces.

27. On July 2, 2020, Gov. Baker issued COVID-19 Order No. 43 which divided Phase III into two separate steps. Phase III businesses providing "Sightseeing and other organized tours (bus tours, duck tours, harbor cruises, whale watching)" were incorporated into Phase III, Step 1 of COVID-19 Order No. 43.

28. COVID-19 Order No. 43 permitted Phase III businesses to reopen beginning July 6, 2020.

29. On July 2, 2020 Gov. Baker issued COVID-19 Order No. 44 stating "[o]utdoor gatherings in enclosed, permitted, or leased spaces are limited to 25% of the maximum permitted occupancy of the facility as documented in the facility's occupancy permit on record with the municipal building department or other municipal record holder, if there is a capacity limitation on record, or 8 person per 1,000 square feet where no occupancy limitation is on record, and never more than 100 persons in a single outdoor space that is enclosed, permitted, or leased."

30. COVID-19 Order No. 44 defined gatherings in a "permitted space" as "any gathering that is required to receive a permit from a state or municipal authority. Gatherings that are subject to the limitations of this Section include, without limitation, community, civic, public, leisure, sporting events, concerts, conferences, fundraisers, fairs, festivals, and other similar events or activities."

31. COVID-19 Order No. 44 prohibited certain gatherings including "[s]treet festivals, walk-a-thons, road races and bike races, and other outdoor, organized athletic or recreational events that gather large numbers of participants or spectators outdoors are prohibited until further Order; provided, however, that outdoor gatherings for the purposes of political expression are not subject to this Order."

32. COVID-19 Order No. 44 allowed outdoor gatherings of up to 100 people while exempting public gatherings for political expression from the 100-person cap.

33. Governor Baker delegated authority to Defendant Keneally, as the Secretary of Housing and Economic Development for the Commonwealth of Massachusetts, allowing Secretary Keneally to issue safety standards for "museums and cultural and historical facilities and guided tours."

34. On July 2, 2020, Defendant Keneally issued Sector Specific Workplace Safety Standards for Museums and Cultural and Historical Facilities and Guided Tours to Address COVID-19 (*hereinafter*, "Workplace Safety Standards No. 1") which "limit[ed] group size in walking tours to groups of no more than 10 persons (including guides)."

35. However, Workplace Safety Standards No. 1 also stated "[e]ach tour operator using a bus or other vehicle (such as a trolley, harbor cruise vessel, or duck boat) must limit occupancy at all times to 50% of the tour."

36. Upon information and belief, 50% capacity would allow bus or other vehicles to carry more than 10 to 12 people including driver and tour guide.

37. COVID-19 Order No. 44 issued by Gov. Baker exempted outdoor gatherings for "political expression" from any restrictions but continued to limit walking tours on public properties to 10 people.

38. COVID-19 Order No. 44 issued by Gov. Baker allowed outdoor gatherings in "permitted space" to be up to 100 people but continued to limit licensed walking tours on public properties to 10 people.

39. On August 7, 2020 Gov. Baker issued COVID-19 Order No. 46 stating "[o]utdoor gatherings for the purpose of political expression and gatherings for religious activities shall not be subject to the limitations in Section 3 of this Order…never more than 50 persons in a gathering in a single outdoor space…[e]xcept as provided for in Sections 1 and 2, these restrictions apply to gatherings in all public and private venues and locations in the Commonwealth, including private homes, backyards, parks, athletic fields, and parking lots…[t]his Order does not impose a general capacity limitation on large, unenclosed public spaces such as beaches, parks and recreation areas."

40. On September 29, 2020 Gov. Baker issued COVID-19 Order No. 52 allowing exceptions for outdoor religious gatherings and outdoor political gatherings.

41. On or about October 2, 2020, Secretary Keneally updated the Sector Specific Workplace Safety Standards for Museums and Cultural and Historical Facilities and Guided Tours to Address COVID-19 (*hereinafter,* "Workplace Safety Standards No. 2").

42. Workplace Safety Standards No. 2 did not alter the restriction on walking tours in Workplace Safety Standards No. 1 which "limit[ed] group size in walking tours to groups of no more than 10 persons, excluding guides…"

43. On November 2, 2020 Gov. Baker issued COVID-19 Order No. 54 established that outdoor gatherings in public settings are limited to 50 people in "Lower Risk Communities, as defined in COVID-19 Order No. 51 or in any successor order, gathering at event venues pr in public settings are limited to a maximum of 100 persons in a single venue or space. In communities that do not qualify as Lower Risk Communities, gatherings at events venues or in public settings are limited to a maximum of 50 persons in a single venue or space."

44. COVID-19 Order No. 54 expressly states, "Outdoor gatherings for the purpose of political expression shall also not be subject to the limitations of Section 3."

45. On or about November 2, 2020. Defendant Keneally issued Sector Specific Workplace Safety Standards for Museums and Cultural and Historical Facilities and Guided Tours to Address COVID-19 (*hereinafter*, Workplace Safety Standards No. 3) by limiting guided walking tours "to groups of no more than 12 persons, including guides."

46. Without any warning, justification or explanation, after July 2, 2020, the Defendants, through COVID-19 Orders and Standards, favored political gatherings over walking tours, based on the content of speech.

47. Without any warning, justification or explanation, after August 7, 2020, the Defendants, through COVID-19 Orders and Standards, favored religious gatherings over walking tours, based on the content of the speech.

48. Without any justification or explanation, after July 2, 2020, the Defendants, through COVID-19 Orders and Standards, arbitrarily limited outdoor walking tours to 10 people while allowing other outdoor gatherings up to 100 people.

49. The outdoor walking tours Plaintiffs provide depend on the expression of speech that is connected to the historical location where the walking tour is performed.

50. An outdoor guided walking tour on public streets and public sidewalks is a public gathering.

51. Walking tours inherently involve speech protected under the Free Speech Clause of the First Amendment as applied to the states and their political subdivision under the Fourteenth Amendment.

52. Plaintiffs provide walking tours for customers in Salem, Massachusetts.

53. On multiple occasions, Plaintiffs have had to turn away customers due to limitations on the size of walking tours.

54. Walking tours, such as the walking tours provided by Plaintiffs, are provided on public sidewalks, public streets and other outdoor public properties.

55. Limitations on the amount of people who may participate in the walking tour to 10 or 12 people constitutes a restriction on Plaintiffs' speech.

56. While the Defendants have chosen to limit the Plaintiffs' audience to 10 to 12 people, previously 10 people, on public sidewalks, public streets and other outdoor public properties due to the Plaintiffs' classification as a walking tour, the Defendants have allowed outdoor public gatherings of 25 to 100 people or unlimited in the same location as the walking tour – public sidewalks, streets, and other outdoor public properties – if the gathering is classified as political speech and religious gatherings.

57. On or about June 16, 2020 Gov. Baker stated in a press conference that in Massachusetts "[t]housands of people have been congregating in large groups over the past several weeks to exercise their First Amendment rights" to protest a murder involving law enforcement.

58. Other guided tours that use buses or some form of a motorized vehicle on public streets are permitted to operate at a 50% capacity. Therefore, a guided tour such as a Duck Tour which regularly hold 32 people at a time, is permitted to provide a guided tour to more than 10 to 12 people.

59. On July 4, 2020 over 100 people gathered outside in Nubian Square in Roxbury, Massachusetts and marched on public streets and public sidewalks to the Boston Common in a demonstration against systemic racism.

60. On or about September 9, 2020 over 100 people gathered outside in Boston, Massachusetts to protest calling for cases to be reopened involving people who were killed by police officers.

61. Prior to the restrictions created by Gov. Baker's COVID-19 Order No. 54 and the previous COVID-19 Orders that limited outdoor guided walking tours to 10 to 12 people, in Salem, Massachusetts Plaintiffs were allowed to have up to 50 people participate in an outdoor guided walking tour on public streets and public sidewalks.

62. The restrictions Defendants put on the amount of people permitted at an outdoor gathering on public streets and public sidewalks varies depending on the subject matter and/or contents of the speech.

63. Although the governmental restrictions reduced Plaintiffs right to have 50 people participate in an outdoor guided walking tour on public streets and public sidewalks to only 10 to 12 people, an outdoor gathering on the same public streets and public sidewalks for

political expression is not subject to any limitation while other outdoor gatherings on public streets and sidewalks allow more than 10 to 12 people at a time.

64. The Commonwealth's restrictions issued by Governor Baker and Secretary Keneally burden a substantial category of protected speech based on the content of the speech – walking tours.

65. The Defendants failed to attempt or consider less-speech-restrictive alternatives before implementing the COVID-19 Orders which burdened protected speech by limiting the amount of people allowed to participate in an outdoor walking tour to 10 to 12 people.

66. The government's restriction on Plaintiff's speech is not narrowly tailored to serve the governmental interest.

67. There are alternative measures that would burden less speech that are available for the government to successfully serve its governmental interest.

68. It is unclear how long the exigency of the Pandemic will last.

69. As a result of the government's restriction on Plaintiffs' speech, Plaintiffs suffered damages.

## CAUSES OF ACTION

### *Count I*
### Violation of 42 U.S.C. 1983, Deprivation of Plaintiffs' Right to Free Speech Guaranteed by the First Amendment of the United States Constitution
### (Substantive Due Process)

70. The Plaintiffs hereby repeats and realleges the preceding paragraphs of this Complaint as if stated herein.

71. The speech restrictions on public streets and sidewalks by COVID-19 Order No. 54 and its prior COVID-19 Orders, were adopted and enforced by the Defendants while acting under the color of state law.

72. While acting under the color of state law, Defendants have deprived Plaintiffs of its right to engage in speech in violation of the Free Speech Clause of the First Amendment applied to the states and their political subdivisions under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

73. There is no compelling government interest to restrict guided walking tours to 10 to 12 people that are performed on public streets and sidewalks while allowing other outdoor gatherings on public streets and sidewalks to either be exempt from any capacity limitations or outdoor gatherings be allowed to have anywhere from 25 to 100 people.

74. The restrictions imposed by the Defendants are not narrowly tailored to serve a significant governmental interest and do not leave open ample alternative channels for communication of the information.

75. The restrictions imposed by the Defendants on guided walking tours are not the least restrictive means of achieving a compelling state interest.

76. The different restrictions on gatherings in public streets and public sidewalks is applied based on the contents of your speech.

77. There is no difference between a gathering on public streets and public sidewalks to provide a guided walking tour through a historical area and a gathering on public streets and sidewalks for expression of religious or political views.

78. Defendants restrictions specifically targets guided walking tours based on the contents of its speech and/or prioritizes other forms of speech such as religion and political speech over guided walking tours.

79. As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment, Plaintiff has suffered irreparable harm, including the loss of its constitutional rights, entitling Plaintiffs to declaratory and injunctive relief.

80. As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment, Plaintiff has suffered economic damages.

### COUNT II
### Violation of 42 U.S.C. 1983, Deprivation of Plaintiffs' Right to Equal Protection of the Law Guaranteed by the Fourteenth Amendment of the United States Constitution
### (Substantive Due Process)

81. The Plaintiffs hereby repeats and realleges the preceding paragraphs of this Complaint as if stated herein.

82. By the reason of the aforementioned speech restriction, including COVID-19 Order No. 54 and its previous COVID-19 Orders, created, adopted and enforced under color of state law, Defendants has deprived Plaintiff of the equal protection of law guaranteed under the Fourteenth Amendment to the U.S. Constitution and 42U.S.C. § 1983, in that Defendants limited Plaintiffs' ability to express its messages to its audience based on its content, subject and viewpoint by limiting the amount of people to 10 to 12 people on a guided walking tour while other gatherings on public streets and public sidewalks are permitted to have 25 to 100 people or in some circumstances, no limitation at all.

83. As a direct and proximate result of Defendant's violation of the Equal Protection Clause of the Fourteenth Amendment, Plaintiff has suffered irreparable harm, including the loss of its constitutional rights, entitling Plaintiff to declaratory and injunctive relief.

84. As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment, Plaintiff has suffered economic damages.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs ask this Court for the following relief:

i. A declaratory judgment that COVID-19 Executive Order No. 54 along with the prior COVID-19 Executive Orders listed in this Complaint, and Defendants policies individually and/or collectively violate Plaintiffs' First and Fourteenth Amendment rights;

ii. A preliminary and/or permanent injunction restraining Defendants and their officers, servants, employees, agents and all person in concert or participation with them who receive notice of the injunction from enforcing COVID-19 Executive Order No. 54 and the previous COVID-19 Executive Orders that specifically targeted guided walking tours limiting the amount of people permitted on an outdoor guided walking tour on public streets and public sidewalks to 10 to 12 people;

iii. Such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable;

iv. Attorney's fees and costs (including incidental costs) pursuant to 42 U.S.C. § 1988 and any other applicable law

Dated:   November 18, 2020

Respectfully submitted,
THE PLAINTIFFS
By Their attorneys

/s/ Daryl Abbas

_____
Daryl Abbas, Esq. B.B.O. # 676080
John Koury, Esq. B.B.O. # 694088
Upper Charles Law Group, LLC

10 Kearney Road, Suite 101  
Needham, MA 02494  
Tel: 617.600.7140  
Fax: 603.328.5976  
dabbas@uclawgroup.com  
jkoury@uclawgroup.com