UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ZAAL VENTURES CORP., et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil No. 20-12054-LTS |
| CHARLES D. BAKER, in his official capacity as Governor of Massachusetts, et al. | ) ) ) ) ) | |
| Defendants. | ) ) | |

ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (DOC. NO. 11)
AND DEFENDANTS' MOTION TO DISMISS (DOC. NO. 16)

March 17, 2021

SOROKIN, J.

Plaintiffs Zaal Ventures Corp. and Colonial Ghosts, LLC d/b/a Salem Ghosts have filed a motion for a preliminary injunction preventing Defendants Charles D. Baker, Michael Kennealy, and Monica Bharel in their official capacities from enforcing a COVID-19 Order that places restrictions on the size of outdoor guided walking tours in Massachusetts. Doc. No. 11.[1] Plaintiffs, whose business provides guided walking tours on public streets and sidewalks in Salem, Massachusetts, allege that the COVID-19 restrictions imposed by the Defendants violate their First Amendment and Fourteenth Amendment rights. Defendants opposed the motion, Doc. No. 17, and Plaintiffs replied, Doc. No. 18. Defendants additionally filed a Motion to Dismiss, Doc. No. 16, which Plaintiffs opposed, Doc. No. 21. The Court held a hearing on March 9, 2021.

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header.

For the reasons that follow, Plaintiffs' Motion for Preliminary Injunction is DENIED and Defendants' Motion to Dismiss is ALLOWED.

## I. FACTS

The facts are drawn from Plaintiffs' Amended Complaint, Doc. No. 7. The Court also considers the COVID-19 Orders issued by Defendants, which are linked throughout both parties' briefs and appended to Defendants' papers at Doc. No. 16-1 and Doc. No. 23-1.[2]

Plaintiffs operate outdoor guided walking tours in Salem, Massachusetts. Doc. No. 7 ¶ 2. Prior to the COVID-19 pandemic, Plaintiffs were allowed to have 50 people participate in a single guided tour under local law. Id. ¶ 61. On March 10, 2020, Governor Charles D. Baker declared a state of emergency in the Commonwealth of Massachusetts due to the outbreak of the COVID-19 pandemic. Id. ¶ 17. In the months that followed, Governor Baker issued a variety of executive orders that addressed the pandemic, including limiting business operations and group gatherings. See id. ¶¶ 18–45. Initially, businesses that did not provide essential services were shuttered, including Plaintiffs' business. Id. ¶ 18. Sightseeing and organized tours (such as Plaintiffs' tours), which were designated "Phase III" businesses, were allowed to reopen beginning July 6, 2020. Id. ¶¶ 24–25, 28. These businesses were allowed to reopen subject to sector-specific rules. For guided tours, the sector-specific rule stated, under a heading titled

---

[2] A Court generally "may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). An exception exists, however, "for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Such documents "merge[] into the pleadings" and may be considered in a motion to dismiss pursuant to Rule 12(b)(6). Alternative Energy, 267 F.3d at 33. The COVID-19 Orders are official public documents; their authenticity is not disputed; and they are central to Plaintiffs' claims and are referred to throughout the complaint.

"Group Size Limitations for Guided Tours": "Tour operators must limit group size in walking tours to no more than 10 persons (including guides)." Doc. No. 16-1 at 62. This guided walking tour size limit remained in place until November 5, 2020, at which point a reissued version of the sector-specific rules raised the walking tour cap to no more than 12 persons, including guides. Id. at 71. The COVID-19 Orders do not provide a definition of a "walking tour." Plaintiffs further allege that while the COVID-19 Orders have prohibited or limited the size of group gatherings in a variety of settings including "outdoor gatherings,"[3] the COVID-19 Orders expressly exempt "[o]utdoor gatherings for the purpose of political expression" from the "outdoor gathering" size restrictions. Doc. No. 7 ¶¶ 31–32, 44. Plaintiffs make no claim that they qualify under the political expression exemption or that their walking tours constitute "outdoor gatherings" within the meaning of the COVID-19 Orders.

Defendants submitted supplemental authority on February 23, 2021, noting that additional executive orders and sector-specific safety standards were issued after they filed their Motion to Dismiss and accompanying memorandum. Doc. No. 23. Guided walking tours remain capped at 12 people. Doc. No. 23-1 at 15. General gathering limits are capped at 10 people indoors and 25 people outdoors, while "[o]utdoor gatherings for the purpose of political expression" remain exempt from any size limitation. Id. at 9.

## II.  MOTION TO DISMISS

The Court turns first to resolve the Motion to Dismiss because advancing a viable claim is a necessary predicate to satisfying the likelihood of success element of the criteria for issuing preliminary injunctive relief.

---

[3] The July 2, 2020 COVID-19 Order (Order No. 44) defined gatherings as follows: "Gatherings . . . include, without limitation, community, civic, public, leisure, sporting events, concerts, conferences, fundraisers, fairs, festivals, and other similar events or activities." Doc. No. 7 ¶ 30.

### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating a complaint, the court "must accept all well-pleaded facts alleged in the Complaint as true and draw all reasonable inferences in favor of the plaintiff." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). A complaint must be dismissed for failure to state a claim when it lacks "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997).

### B. Discussion

Plaintiffs have agreed to dismiss all claims against Defendants for compensatory damages, as Plaintiffs have brought suit against Defendants in their official capacity. Doc. No. 21 at 6; see Will v. Mich. Dep't of State Police, 491 U.S. 58, 70–71 (1989) (state officials sued for monetary damages in their official capacity are not "persons" amenable to suit). Thus, all that remains before this Court are Plaintiffs' claims for injunctive relief.

As a preliminary matter, in interpreting the COVID-19 Orders, the Court looks to the plain meaning of their language, as is customary under Massachusetts law. See Rockland Tr. Co. v. Langone, 75 N.E.3d 594, 597 (Mass. 2017). The Court interprets the sector-specific rules regarding guided walking tours to apply to all guided walking tours, regardless of the content that guides provide on the tour, as the language contains no exceptions or limitations. Moreover, at the Court's March 9, 2021 hearing, the Commonwealth explained that the regulation applies even to a walking tour that contains political content. The Attorney General has "has control over

4

the conduct of litigation involving the Commonwealth," Sec'y of Admin. & Fin. v. Attorney General, 326 N.E.2d 334, 336 (Mass. 1975), and thus the Court accepts this representation as the binding position of the Commonwealth in this lawsuit as to the scope of the COVID-19 Orders. Additionally, Plaintiffs agreed at the hearing that their business provides guided walking tours and is not another kind of "outdoor gathering" described by the COVID-19 Orders.

With these points in mind, the Court addresses Plaintiffs' First Amendment and Fourteenth Amendment claims below.

### 1. First Amendment Claim (Count I)

Plaintiffs first allege that Defendants' COVID-19 Orders have violated Plaintiffs' First Amendment right to engage in free speech. Doc. No. 7 ¶ 72. The First Amendment provides that Congress, and by incorporation, the States, "shall make no law . . . abridging the freedom of speech." U.S. Const. amend I; see Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 47 (1st Cir. 2005). This protection applies to "symbolic or expressive conduct" as well as actual speech. Virginia v. Black, 538 U.S. 343, 358 (2003). The Supreme Court has held that two types of restrictions that may have the incidental effect of burdening expression implicate the First Amendment: (1) restrictions "where it was conduct with a significant expressive element that drew the legal remedy in the first place" and (2) restrictions "where a statute based on a nonexpressive activity has the inevitable effect of singling out those engaged in expressive activity." Arcara v. Cloud Books, Inc., 478 U.S. 697, 706–07 (1986).

The First Amendment is not implicated here because Plaintiffs do not plausibly allege that the COVID-19 Orders fall into either category. First, the restriction on the number of participants in a walking tour was imposed to prevent the spread of COVID-19, not to prevent

any expressive aspects of guided tours.[4] Cf. Arcara, 478 U.S. at 707 ("the First Amendment is not implicated by the enforcement of a public health regulation of general application against the physical premises in which respondents happen to" engage in expressive activity); Mitchell v. Newsom, No. CV208709DSFGJSX, 2020 WL 7647741, at *4 (C.D. Cal. Dec. 23, 2020) (noting that COVID-19 Order closing tattoo parlors did not fall into first Arcara category because it "was not imposed to prevent the expressive element of tattooing"). The restriction does not regulate speech or expressive conduct—tour guides are free to speak or not speak, and the content of tour guides' speech is not subject to sanction. Nowhere do Plaintiffs allege that the specific size of each tour they give is in itself expressive. In fact, they allege that prior to the COVID-19 pandemic, they were subject to other local laws that limited the size of their tour groups, with which they presumably complied. See Doc. No. 7 ¶ 61.

Second, Plaintiffs do not plausibly allege that the COVID-19 Orders have the "inevitable effect" of "singling out" those engaged in expressive activity. In Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue, 460 U.S. 575, 592 (1983), the Supreme Court struck down a tax imposed on the sale of large quantities of newsprint and ink. In Arcara, the Supreme Court explained that the Minneapolis Star tax fell into the second category of regulations that implicate the First Amendment because "even though the tax was imposed upon a nonexpressive activity . . . the burden of the tax inevitably fell disproportionately—in fact, almost exclusively"

---

[4] Plaintiffs rely on Billups v. City of Charleston, 961 F.3d 673, 683–84 (4th Cir. 2020) to argue that guided tours on public sidewalks are a form of expression protected by the First Amendment and thus limitations on the amount of people who may participate unconstitutionally restricts expression. Doc. No. 21 at 6-8. Even assuming that guided tours are a protected form of expression, Billups does not impact the Court's analysis here. The ordinance at issue in Billups was subject to First Amendment scrutiny because it directly prohibited tour guides from "speaking to visitors . . . on certain public sidewalks and streets." 961 F.3d at 683. In other words, it targeted the expressive aspects of a guided tour, which the COVID-19 Orders do not.

on the newspaper industry, which was exercising First Amendment rights. Arcara, 478 U.S. at 704. The COVID-19 Orders do not disproportionately or exclusively burden the tour industry. In fact, a wide variety of outdoor businesses that involve individuals gathering in close physical proximity are subject to group size restrictions of roughly 10-12 people, including organized hikes, camping, rafting, and hunting classes. See Doc. No. 16-1 at 49, 53, 57, 59, 82.

Plaintiffs further argue that they have been "singled out" because the COVID-19 Orders exempt from size restrictions imposed on "outdoor gatherings" those "gatherings for the purpose of political expression." Doc. No. 21 at 8. They use this same argument to allege that the COVID-19 Order is a content-based restriction on their speech, because it treats political speech differently from other speech. Doc. No. 12 at 9–10. This argument is not well-founded. The walking tour restriction Plaintiffs challenge applies to an entire sector (museums, cultural and historical facilities, and guided tours), and the COVID-19 Orders treat commercial activities with similar characteristics similarly. To the extent that walking tour groups are treated differently from anything else, the distinction is based on conduct—engaging in the activity of going on a tour—and not the content of speech or expression. Cf. Nat'l Ass'n of Theatre Owners v. Murphy, No. 320CV8298BRMTJB, 2020 WL 5627145, at *10 (D.N.J. Aug. 18, 2020) (finding no content-based restriction on speech where COVID-19 order closed movie theaters but exempted political gatherings because "the impetus for the closure of movie theaters is the conduct at the theaters, rather than the content that would be shown"). Indeed, here the size limitation imposed on walking tours applies to all walking tours without regard to the speech content of the tour. The exception for political purposes does not apply to the walking tour limitation—rather, it applies to the limitation on outdoor gatherings, and Plaintiffs have never contended that their conduct constitutes an outdoor gathering within the meaning of the COVID-

19 Orders. Thus, Plaintiffs have not plausibly alleged a violation of their First Amendment rights based on the COVID-19 Orders.

### 2. Fourteenth Amendment Claim (Count II)

Plaintiffs next allege that Defendants' COVID-19 Orders violate the Equal Protection Clause of the Fourteenth Amendment, which provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Plaintiffs claim that the walking tour size limit of 12 persons denies them equal protection because it imposes a different size cap on walking tours from outdoor political gatherings (which are unrestricted) and vehicular tours (which operate at a capacity reduced by percentage, rather than under a fixed cap). Doc. No. 7 ¶ 82; Doc. No. 21 ¶ 12–13. Plaintiffs do not plausibly allege that the COVID-19 Orders employ classifications subject to heightened scrutiny or implicate a fundamental right, and thus rational basis review applies. Kittery Motorcycle, Inc. v. Rowe, 320 F.3d 42, 47 (1st Cir. 2003). The COVID-19 Orders are regulating different activities—walking tours and outdoor gatherings—which have different characteristics not subject to constitutional protection. "A law survives rational basis review so long as the law is rationally related to a legitimate governmental interest." Cook v. Gates, 528 F.3d 42, 55 (1st Cir. 2008) (citation omitted). It is indisputable that the government has a legitimate interest in reducing the risk of COVID-19 transmission. Limiting guided tours, particularly those that involve speaking and other behavior that may contribute to virus transmission, is rationally related to that interest. To the extent that guided walking tours are treated differently from vehicular tours under the COVID-19 Orders, Defendants point out a rational distinction—on a vehicular tour, the space between guests is fixed for the duration of the tour and a percentage-based cap allows guests to maintain sufficient distance, while a walking tour involves moving through different spaces and is more likely to

encourage crowding around a guide. Doc. No. 17 at 14–15. The Court discusses the "preferential treatment" afforded to outdoor political gatherings in the First Amendment section above. Plaintiffs have failed to plausibly allege a violation of their Fourteenth Amendment rights.

### III. MOTION FOR PRELIMINARY INJUNCTION

Because the Court allows Defendants' motion to dismiss, Plaintiffs' motion for injunctive relief is moot. In any event, Plaintiffs are not entitled to an injunction. To obtain injunctive relief, the Court must consider: (1) the movant's likelihood of success on the merits; (2) the likelihood of the movant suffering irreparable harm; (3) the balance of equities; and (4) whether granting the injunction is in the public interest. See Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013). Plaintiffs "bear[] the burden of establishing that these four factors weigh in [their] favor." Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) (citation omitted). Plaintiffs have failed to establish that the first factor—likelihood of success on the merits—weighs in their favor. Consequently, the Court need not address the remaining prongs of this test. Plaintiffs' Motion for Preliminary Injunction is DENIED.

### IV. CONCLUSION

One last point bears mention. The record indicates that the COVID-19 Orders have created great difficulty for Plaintiffs and their employees. The record also suggests that Plaintiffs have developed substantial measures to protect the safety of tour guides, customers, and passersby in their entirely outdoor operation, rendering their operation safer in terms of the risk of virus transmission than they were before the onset of the pandemic. The Court's ruling measures only the constitutionality of the challenged orders. The reasonableness and wisdom of the particular details of the orders is a matter for the Commonwealth.

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction (Doc. No. 11) is DENIED and Defendants' Motion to Dismiss (Doc. No. 16) is ALLOWED.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge